**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                            :
In re                                       :      Case No. 24-12256 (PMM)
                                            :
SMILE KRAFTERS, P.C.,                       :      Chapter 11 (Subchapter V)
                                            :
          Debtor.                           :
_____
                                            :

## <u>DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION</u>

This Plan of Reorganization (the "Plan") is presented to you to inform you of the proposed plan for the orderly liquidation of the assets of Smile Krafters, P.C. (the "Debtor") and to seek your vote to accept the Plan.

You are encouraged carefully to review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN.  IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____ WHICH IS ALSO THE DEADLINE TO SUBMIT A BALLOT ACCEPTING OR REJECTING THE PLAN.**

**BALLOTS SHOULD BE COMPLETED AND RETURNED TO THE UNDERSIGNED COUNSEL FOR THE DEBTOR BY _____,**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ at _____ A.M. AT THE ROBERT N.C. NIX, SR. FEDERAL COURTHOUSE, COURTROOM NO. 1, 900 MARKET STREET, PHILADELPHIA, PA 19107.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated:  September 3, 2024              /s/ *Jeffrey Kurtzman*_____
                                      Jeffrey Kurtzman, Esquire
                                      KURTZMAN | STEADY, LLC
                                      555 City Avenue, Suite 480
                                      Bala Cynwyd, PA 19004
                                      Telephone: (215) 839-1222
                                      Email: kurtzman@kurtzmansteady.com
                                      Attorneys for Debtor

# Contents

CONTENTS .................................................................................................................................... 2

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ................................. 4

ARTICLE 1 .................................................................................................................................... 5

HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR ..................................... 5

    **1.1.** NATURE OF THE DEBTOR'S BUSINESS. ............................................................................... 5

    **1.2** HISTORY OF BUSINESS OPERATIONS OF THE DEBTOR................................................... 5

    **1.3** FILING OF THE DEBTOR'S CHAPTER 11 CASE. ............................................................... 5

    **1.4.** LEGAL STRUCTURE AND OWNERSHIP. ............................................................................ 5

    **1.5.** DEBTOR'S ASSETS. ........................................................................................................ 5

    **1.6.** DEBTOR'S LIABILITIES. ................................................................................................. 5

    **1.7.** CURRENT AND HISTORICAL FINANCIAL CONDITIONS. ................................................... 6

    **1.8.** EVENTS LEADING TO THE FILING OF THE BANKRUPTCY CASE. ...................................... 6

    **1.9.** SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE. ............................................... 6

    **1.10.** PROJECTED RECOVERY OF AVOIDABLE TRANSFERS. ...................................................... 6

ARTICLE 2 .................................................................................................................................... 7

THE PLAN ..................................................................................................................................... 7

    **2.1.** UNCLASSIFIED CLAIMS. ................................................................................................. 7

      *A.* *Administrative Expenses* ................................................................................................. 7

      *B.* *Priority Tax Claims.* .................................................................................................... 10

    **2.2** CLASSES OF CLAIMS AND EQUITY INTERESTS. ............................................................ 10

      *C. Class of General Unsecured Claims* ............................................................................. 11

      *D. Class of Equity Interest Holders.* ................................................................................. 11

    **2.3**. ESTIMATED NUMBER AND AMOUNT OF CLAIMS OBJECTIONS. ...................................... 11

    **2.4.** TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ............................. 12

    **2.5.** MEANS FOR IMPLEMENTATION OF THE PLAN. ............................................................. 13

    **2.6.** PAYMENTS. ................................................................................................................. 14

    **2.7**. POST-CONFIRMATION MANAGEMENT. .......................................................................... 14

    **2.8.** TAX CONSEQUENCES OF THE PLAN. ............................................................................ 14

    **2.9** APPOINTMENT OF CONSUMER PRIVACY OMBUDSMAN. ............................................... 14

ARTICLE 3 .................................................................................................................................. 15

FEASIBILITY OF PLAN ........................................................................................................... 15

**3.1.** ABILITY TO FUND THE PLAN. ........................................................................................ 15

ARTICLE 4 .................................................................................................................................. 15

LIQUIDATION ANALYSIS ....................................................................................................... 15

ARTICLE 5 .................................................................................................................................. 15

DISCHARGE ............................................................................................................................... 16

**ARTICLE 6** ..............................................................................................................................**16**

**GENERAL PROVISIONS** .......................................................................................................**16**

    **6.1.**   TITLE TO ASSETS................................................................................................... 16

    **6.2.**   BINDING EFFECT. .................................................................................................. 17

    **6.3.**   SEVERABILITY....................................................................................................... 17

    **6.4.**   RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT. ................................. 17

    **6.5.**   CAPTIONS. ............................................................................................................ 17

    **6.6.**   MODIFICATION OF PLAN........................................................................................ 17

    **6.7.**   FINAL DECREE ..................................................................................................... 18

**ARTICLE 7** ..............................................................................................................................**18**

**ATTACHMENTS** .......................................................................................................................**18**

**ARTICLE 8** ..............................................................................................................................**18**

**FREQUENTLY ASKED QUESTIONS** .......................................................................................**18**

**ARTICLE 9** ..............................................................................................................................**20**

**DEFINITIONS** ..........................................................................................................................**20**

**EXHIBIT "A" DEBTOR'S MOST RECENT MONTHLY OPERATING REPORT**
**EXHIBIT "B" ASSUMED EXECUTORY CONTRACTS**
**EXHIBIT "C" REJECTED EXECUTORY CONTRACTS**
**EXHIBIT "D" LIQUIDATION ANALYSIS**
**EXHIBIT "E" PURCHASER LOI**
**EXHIBIT "F" DEBTOR'S PATIENT PRIVACY POLICY**

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Debtor operates a clinical dental practice located at 1247 South Cedar Crest Boulevard, Suites 300 and 303, Allentown, Pennsylvania (the "Premises").  The Debtor leases the Premises pursuant to respective nonresidential real property leases (collectively, the "Lease").  The Debtor's Chapter 11 filing was necessitated by certain pre-petition litigation initiated by the Debtor's landlord, Cedar Crest Professional Park VII, L.P. (the "Landlord"), which obtained respective judgments by confession against the Debtor for money damages and for possession of the Premises, as well as an indictment returned by the United States Attorney for the Eastern District of Pennsylvania on January 18, 2023 against the Debtor's principal and other individuals (but not the Debtor itself), which has rendered the Debtor's professional staff ineligible to perform dental services as Medicaid providers.

Pursuant to the Plan, the Debtor intends to engage in a dual-track process, including (a) the marketing and orderly sale of its business and assets as a going concern  (the "Going Concern Track") to Franklyn Scott, DDS, LLC (the "Purchaser") in accordance with the letter of intent (the "Purchaser LOI") annexed hereto and made a part hereof as Exhibit "E", or (b) the liquidation of its furniture, fixtures, equipment and other assets (the "Liquidation Track") in one or more non-going concern sale transactions in the event that the condition set forth in the Purchaser LOI concerning the execution of a new lease between the Purchaser and the Landlord is not satisfied. All such sales will be free and clear of liens, claims, encumbrances and interests (collectively, "Encumbrances") and shall, to the extent applicable, be exempt from transfer tax pursuant to section 1146(a) of the Bankruptcy Code.

Because the Purchaser LOI is, by its terms, subject to the Purchaser's execution of a new lease with the Landlord for the Premises, the determination whether to proceed with the Going Concern Track or the Liquidation Track will depend on the Landlord's willingness to enter into a new lease with the Purchaser, thereby satisfying the Purchaser's condition to acquiring the Debtor's business and assets.  In connection with either the Going Concern Track or the Liquidation Track, the Debtor will reject the Lease.

The classification of claims against the Debtor pursuant to the Plan is as follows:

1.  Class 1 – Allowed Priority Non-Tax Claims.
2.  Class 2 – Allowed General Unsecured Claims.
3.  Class 3 – Allowed Equity Interests.

The Plan provides that Priority Claims in Class 1 will be paid in full from the proceeds resulting from the sale of the assets and that Class 2 will be paid, if at all, ratably from such sale proceeds and from recoveries resulting from claims or causes of action arising under Chapter 5 of the Bankruptcy Code.  Class 3 will not receive any distribution under the Plan unless and to the extent that all Classes of Claims are fully paid pursuant to the Plan.

For purposes of this Plan, the term "Allowed", as it relates to a claim, refers to the amount

of a claim as determined by a final order of the Bankruptcy Court or by the Debtor's consent to the amount and priority of a filed proof of claim. As set forth more particularly in section 2.3 of this Plan, the Debtor reserves the right to object to any claim in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court.

# ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1.   Nature of the Debtor's Business.**

The Debtor owns and operates a dental practice and is a sublessor under a sublease (the Sublease") of a portion of the Premises to the Purchaser, as sublessee   As of the Petition Date, the Debtor was in active negotiations with the Purchaser, as well as two other prospective purchasers, to acquire the assets in a going concern sale transaction.

**1.2   History of Business Operations of the Debtor.**

The Debtor was incorporated in Pennsylvania on June 15, 2009 and operates a clinical dental practice at the Premises.

**1.3   Filing of the Debtor's Chapter 11 Case.**

On June 30, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code. The Debtor's Chapter 11 case is pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

**1.4.   Legal Structure and Ownership.**

The Debtor is a Pennsylvania professional corporations and is owned by Dr. Bhaskar M. Savani.

**1.5.   Debtor's Assets.**

The assets owned by the Debtor or in which the Debtor holds an interest are described in the Debtor's schedules of assets and liabilities and statement of financial affairs (the "Schedules"), which were filed on July 15, 2024. The assets consist of, among other things, furniture, fixtures and equipment, the Debtor's interest in the Sublease, accounts receivable, Cash, and avoidance claims arising under Chapter 5 of the Bankruptcy Code.

**1.6.   Debtor's Liabilities.**

The Debtor's principal liabilities include obligations to the Landlord pursuant to the Lease.  The Debtor's liabilities as of the Petition Date are described in the Schedules.

### 1.7.    Current and Historical Financial Conditions.

The Debtor's financial information as of the Petition Date is reflected in the Schedules. The Debtor's most current information is reflected in the monthly operating report annexed hereto and made a part hereof as Exhibit "A".

### 1.8.    Events Leading to the Filing of the Bankruptcy Case.

The Debtor commenced this Chapter 11 case in order to stay the Landlord's execution of an order for possession issued by Magisterial District Court of Lehigh County wirh respect to the Premises and in order to preserve the fair market value of both the Debtor's business and its assets. The order for possession provided for an eviction from the Premises on July 1, 2024.

### 1.9.    Significant Events During the Bankruptcy Case.

The Debtor filed its Chapter 11 petition on the Petition Date.

On July 15, 2024, the Debtor filed the Schedules.

On July 16, 2024, the Bankruptcy Court entered an Order approving the Debtor's retention of counsel.

On July 22, 2024, the Debtor filed its Subchapter V status report.

On August 5, 2024, the Debtor's meeting pursuant to § 341(a) of the Bankruptcy Code was held and concluded.

On August 20, 2024, the Debtor filed a motion to extend its deadline to assume or reject the Lease, among other nonresidential real property leases.

On August 21, 2024, the Bankruptcy Court held a Subchapter V status hearing.

On September 5, 2024, the Debtor filed the Plan.

### 1.10.   Projected Recovery of Avoidable Transfers.

The Debtor intends to analyze pre-petition transfers and to pursue preference, fraudulent conveyance, or other avoidance actions in order to supplement the recoveries available to creditors under this Plan.  As of the date hereof, the Debtor cannot provide a reasonable estimate of the value of avoidance claims or whether such claims will result in a creditor recovery net of administrative expenses.

# ARTICLE 2

## THE PLAN

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

### 2.1.    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code.  For example, Administrative Expenses and Priority Tax Claims are not classified.  They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.  As such, the Plan does not place the following Claims in any class:

    A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business on and after the Petition Date, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.  If the Debtor received goods purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Subchapter V Trustee (the "Trustee") for fees and/or reimbursements, and for attorneys, accountants and realtors employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Payment through the Plan as follows:<br>N/A |
| Administrative Tax Claim | $0.00 | Payment through the Plan as follows:<br>paid in the ordinary course of business or from proceeds resulting from the sale of the assets. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Payment through the Plan as follows:<br>N/A |

| Professional fees, as approved by the Bankruptcy Court | $40,000.00 (estimated) | After Bankruptcy Court approval, payment through the Plan as follows: Paid in full on or before the Effective Date. |
|---|---|---|
| Clerk's Office fees | Unknown | Payment through the Plan as follows: Paid in full on or before the Effective Date |
| Other Administrative Expenses | $0.00 | Payment through the Plan as follows: Paid in full on or before the Effective Date. |
| Subchapter V Trustee | $5,000.00 (estimated) | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows: Paid in full on or before the Effective Date. |
| TOTAL | $45,000.00 | |

B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| None | $0.00 | | N/A |

2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan

| Class 1 | *Allowed Priority-Tax Claims* | Unimpaired | Priority Non-Tax Claims will be paid in full on or before the Effective Date from the proceeds resulting from the sale of the assets. |
|---|---|---|---|

C.  Class of General Unsecured Claims

General Unsecured Claims (including unsecured deficiency claims, if any) are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 2, which consists of general unsecured Claims against the Debtor:

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| **Class 2** | Allowed General Unsecured Claims | Impaired | Allowed General Unsecured Claims will be paid Pro Rata from the proceeds resulting from the sale of the assets and from litigation recoveries. |

In the event of a going concern sale, the Debtor anticipates that the holders of Allowed Class 2 Claims will be paid in full from the proceeds of the sale.

D.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company, the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| **Class 3** | Equity Interest holder | Impaired | The Equity Interest holder will retain his Equity Interest, but will otherwise receive nothing under the Plan |

**2.3.**  Estimated Number and Amount of Claims Objections.

11

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. Any Claim as to which an objection is filed will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4.    Treatment of Executory Contracts and Unexpired Leases

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which include the Lease and the Sublease) and the impact such intentions would have on the other parties to the contracts.

[X]   Assumption of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit "B" shall be assumed by the Debtor. Presently, the Debtor does not intend to assume any Executory Contracts, but reserves the right to modify Exhibit "B" prior to the Confirmation Hearing.

If you object to the assumption and assignment or rejection of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[X]   Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit  "C"  shall be rejected by the Debtor no later than the Effective Date.in the event that the Lanldord declines to agree to the material modification of the Lease, as desceibed herein.. Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit  "C" , or not assumed before the Effective Date.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases.  If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed

**The Deadline for Filing a Proof of Claim Against the Debtor, including a Claim Arising from the Rejection of an Executory Contract, Is <u>thirty (30) days after the Confirmation Date</u>**.  Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise

2.**5.**    Means for Implementation of the Plan.

The Plan will be implemented through the sale of the Debtor's assets in one or more transactions, as described above. Whether the sale of such assets is effectuated through the Going Concern Track or the Liquidation Track depends upon the Purchaser's ability to negotiate and enter into a new lease of the Premises with the Landlord. The outside date for the sale of the assets and/or the Debtor's business shall be ninety (90) days from the Effective Date, unless extended by Order of the Bankruptcy Court for cause. The sale of the assets shall be free and clear of Encumbrances, with all such Encumbrances attaching exclusively to the sale proceeds.

Upon Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert in the Debtor, free and clear of all Claims, Encumbrances and equitable interests, except as provided in the Plan.  The Debtor expects that the proceeds resulting from the sale of the assets, net of closing costs, will be sufficient to make the distribution required under the Plan.

From and after the Confirmation Date, the Debtor shall continue to manage its assets and operate its business pending the closing of a sale.

**2.6.** Payments.

If the Plan is confirmed under §1191(a) of the Bankruptcy Code, payments to Creditors provided for in the Plan will be made by the Debtor pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c) of the Bankruptcy Code, the Debtor shall make Plan payments except as otherwise provided in the Plan or in the Confirmation Order. Based upon the Purchaser LOI, and assuming a Going Concern Track sale transaction, payments will be made monthly under the Plan.

If the Plan is confirmed under section § 1191(b) of the Bankruptcy Code, except as otherwise provided in the Plan or in the Confirmation Order, the Trustee shall make all Plan payments to creditors under the Plan.

**2.7.** Post-Confirmation Management.

The Debtor shall continue to operate its business from and after the Confirmation Date without compensation of any kind.

**2.8.** Tax Consequences of the Plan.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan:  The Debtor holds its furniture, fixtures and equipment and other assts as capital assets and anticipates that the sale of such assets will result in Pennsylvania and federal capital gains tax liability.  In addition, the Debtor anticipates that the distributions provided for hereunder will or may result in income tax liability to each Creditor receiving such distribution.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to the Tax Consequences of the Plan.**

**2.9** **Appointment of Consumer Privacy Ombudsman.**

Pursuant to §§363(b) and 332 of the Bankruptcy Code, the Court shall appoint a customer privacy ombudsman if it finds that the sale of patient charts, information and/or records is inconsistent with the Debtor's Patient Privacy Policy.  Pursuant to the Purchaser LOI, the Purchaser has agreed to assume the Debtor's Patient Privacy Policy, a copy of which is annexed hereto and made a part hereof as Exhibit "F", and to adhere to such policy as it relates to patients for whom the Debtor provided dental services.

14

# ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. Because the Plan provides for the orderly sale or liquidation of the Debtor's assets, the Debtor submits that the Plan is feasible.

**3.1.** **Ability to Fund the Plan**.

The Debtor believes that, in connection with a transaction under the Going Concern Track, its assets have substantial market value and that the sale of such assets in one or more transactions will be sufficient to permit distributions on account of Allowed Claims as provided in the Plan.

# ARTICLE 4
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit "D".

# ARTICLE 5
## DISCHARGE

**5.1.**

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the Plan, or such other time not to exceed 5 years fixed by the Bankruptcy Court; or

(2) if applicable, of the kind specified in section 523(a) of this title; or alternatively, to the extent that § 1141(d)(3) of the Bankruptcy Code is applicable to the Debtor, the Debtor will not receive any discharge of debt in this bankruptcy case.

# ARTICLE 6

## GENERAL PROVISIONS

**6.1.**    Title to Assets

If a plan is confirmed under § 1191(a) of the Bankruptcy Code, except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests.

If a plan is confirmed under § 1191(b) of the Bankruptcy Code, property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the Confirmation Order, the Debtor shall remain in possession of all property of the estate pending the sale of such property.

**6.2.**    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**6.3.**    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.4.**    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.**    Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.**    Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a) of the Bankruptcy Code. However, the Bankruptcy Court may impose additional requirements, including revoting with respect to the Plan.

If the Plan is confirmed under § 1191(a) of the Bankruptcy Code, the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under § 1191(b) of the Bankruptcy Code, the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the Bankruptcy Court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.**    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

# ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[X]    Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit " A".

[X]    Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit "B".

[X]    Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit "C".

[X]    Liquidation Analysis, annexed as Exhibit "D".

[X]    Purchaser LOI annexed as Exhibit "E".

[X]    Debtor's Patient Privacy Policy annexed as Exhibit "F"

# ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor attempts to restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11.  When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11.  The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?**  In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan.  If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**  To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured.  The Table of Contents will direct

you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why Is Confirmation of a Plan of Liquidation Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of his creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Liquidation?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How do I Determine Whether I am in an Impaired Class?** The Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address:

> Jeffrey Kurtzman, Esquire
> KURTZMAN | STEADY, LLC
> 101 N. Washington Avenue, Suite 4A
> Margate, NJ 08402

**How Do I Determine When and How Much I Will Be Paid?** The amount which you will receive under the Plan will depend on the Allowed amount of your Claim, as determined by the Schedules and any order entered by the Bankruptcy Court fixing the Allowed amount of your claim. The timing of your distribution will depend on the closing of the sale(s) of the Debtor's assets, including whether such sale is accomplished pursuant to a Going Concern Track or Liquidation Track transaction.

# ARTICLE 9

## DEFINITIONS

**9.1.**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.  The definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.**     **Administrative Claimant:**   Any person entitled to payment of an Administration Expense.

**9.3.**     **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.4**     **Administrative Tax Claim**:  Any tax incurred pursuant to Section 503(b)(1)(B) of the Bankruptcy Code.

**9.5.**     **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Bankruptcy Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.6.**     **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.7.**     **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Bankruptcy Code.

**9.8.**     **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets,

credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

**9.9.**    **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.10.**    **Bankruptcy Court**: The United States Bankruptcy Court for the Eastern District of Pennsylvania.

**9.11.**    **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.12.**    **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.13.**    **Chapter 11 Case**: This case under Subchapter V of Chapter 11 of the Bankruptcy Code.

**9.14**    **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.15.**    **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.16.**    **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.17.**    **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.18.**    **Confirmation Hearing**: The hearing to be held on _____ at _____ __.m., to consider confirmation of the Plan.

**9.19.**    **Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.20.**    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.21.**    **Debtor:** Smile Krafters, P.C.

**9.22.**    **Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.23.**    **Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.24.**    **Effective Date:**  30 days after entry of the Confirmation Date (provided that the Confirmation Order is a Final Order) unless the Plan or the Confirmation Order provides otherwise.

**9.25.**    **Equity Interest:** An ownership interest in the Debtor.

**9.26.**    **Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.27.**    **Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.28.**    **Petition Date:**  June 30, 2024, the date on which the Chapter 11 Case was commenced.

**9.29.**    **Plan:** This Plan, either in its present form or as it may be amended or modified from time to time.

**9.30.**    **Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.31.**    **Reorganized Debtor:** The Debtor after the Effective Date.

**9.32.**    **Schedules:** The Schedules and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court listing his liabilities and assets.

**9.33.**    **Secured Creditor:** Any creditor that holds a Claim that is secured by property of the Debtor.

**9.34.**    **Trustee:**  Leona Mogavero, Esquire, the trustee appointed pursuant to § 1183(a) of the Bankruptcy Code and whose duties are prescribed under § 1183(b) of the Bankruptcy Code, the Plan, or the Confirmation Order.

**9.35.** **Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 Case which is not a secured Claim.

Dated: September 5, 2024                                Respectfully submitted,

                                                        By: /s/ Jeffrey Kurtzman
                                                         Jeffrey Kurtzman, Esquire
                                                         KURTZMAN | STEADY, LLC
                                                         555 City Avenue, Suite 480
                                                         Bala Cynwyd, PA 19004
                                                         Telephone: (215) 839-1222
                                                         Attorneys for Debtor

# EXHIBIT "A"

**Fill in this information to identify the case:**

Debtor Name  Smile Krafters PC

United States Bankruptcy Court for the: _____ District of _____

Case number: _____

☐ Check if this is an
   amended filing

---

## Official Form 425C

---

### Monthly Operating Report for Small Business Under Chapter 11                12/17

Month:        July 2024                           Date report filed:    08/16/2024
                                                                        MM / DD / YYYY
Line of business:  DENTAL HEALTHCARE              NAISC code:           _____

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party:                Smile Krafters PC

Original signature of responsible party    _____

Printed name of responsible party          BHASKAR SAVANI

---

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Smile Krafters PC

Case number

17. Have you paid any bills you owed before you filed bankruptcy?  ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☐ ☑ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ _____25.00_____

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ _13,532.26_

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    − $ ___36.78___

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ _13,495.48_

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

    = $ _13,520.48_

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

    *(Exhibit E)*

    $ ___0.00___

Debtor Name  Smile Krafters PC

Case number

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                $   28,043.00

   *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                          25
27. What is the number of employees as of the date of this monthly report?             25

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?     $   0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $   0.00
30. How much have you paid this month in other professional fees?                      $   0.00
31. How much have you paid in total other professional fees since filing the case?     $   0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A<br>**Projected**<br>Copy lines 35-37 from the previous month's report. | — | Column B<br>**Actual**<br>Copy lines 20-22 of this report. | = | Column C<br>**Difference**<br>Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $  20,000.00 | — | $  13,532.26 | = | $  6,467.74 |
| 33. **Cash disbursements** | $  19,395.00 | — | $  36.78 | = | $  19,358.22 |
| 34. **Net cash flow** | $  605.00 | — | $  13,495.48 | = | $ |

35. Total projected cash receipts for the next month:                                  $   22,000.00
36. Total projected cash disbursements for the next month:                           - $   18,319.00
37. Total projected net cash flow for the next month:                                = $   3,681.00

Debtor Name  Smile Krafters PC _____        Case number_____

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39.  Bank reconciliation reports for each account.

☐ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

# EXHIBIT "B"

# ASSUMED CONTRACTS

None.

# EXHIBIT "C"

# REJECTED CONTRACTS

Leases for Premises located at Suites 300 and 303, 1247 South Cedar Crest Boulevard, Allentown, Pennsylvania between Debtor, as lessee, and Cedar Crest Professional Park VII, L.P., as lessor

Sublease for Premises between Debtor, as sublessor, and Franklyn Scott, DDS, LLC

# EXHIBIT D - Liquidation Analysis

[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]

### *Debtor's Estimated Liquidation Value of Assets*

**Assets**

| | |
|---|---|
| a. Cash on hand | $15,000.00 |
| b. Accounts receivable | $28,000.00 |
| c. Inventory | $10,000.00 |
| d. Office furniture & equipment | $20,000.00 |
| e. Machinery & equipment | $25,000.00 |
| f. Automobiles | $N/A |
| g. Building & Land | $N/A |
| h. Customer list | $Unknown |
| i. Investment property (such as stocks, bonds or other financial assets) | $N/A |
| j. Lawsuits or other claims against third-parties | $N/A |
| k. Other intangibles (such as avoiding powers actions) | $TBD |

| | |
|---|---|
| ***Total Assets at Liquidation Value*** | $98,000.00 |

| | |
|---|---|
| **Less:** | |
| Secured Creditors' recoveries | $N/A |
| **Less:** | |
| Chapter 7 trustee estimated commissions and expenses | $7,500.00 |
| **Less:** | |
| Chapter 7 Administrative Expenses | $25,000.00 |
| **Less:** | |
| Priority claims, excluding Administrative Expense claims. | $0 |
| [**Less:** | |
| Debtor's claimed exemptions] | $N/A |

| | |
|---|---|
| (1) Balance for unsecured claims | $65,500.00 |
| (2) Total dollar amount of unsecured claims | $428,000.00 |

| | |
|---|---|
| ***Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:*** | 15% [Divide (1) by (2)] |

| | |
|---|---|
| ***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:*** | 100% |

*rev.6/11/2020*

# EXHIBIT "E"

August 13, 2024

VIA E-MAIL DELIVERY

Re: LOI for Purchase of Assets (patient charts, furniture, fixture and equipment) associated with Dental Practice at 1247 S. Cedar Crest Blvd Suite 300 and Suite 303, Allentown, PA 18103.

Dear Dr. Savani,

I am pleased to present the following Letter of Intent that outlines the principal terms and conditions under which my corporate entity, Franklyn Scott, DDS, LLC owned by Franklyn Scott, DDS ("Buyer"), would be interested in purchasing all of the assets (the "Proposed Transaction") associated with, or used in, the Dental Practice known as SmileKrafters, 1247 S. Cedar Crest Blvd Suite 300 and Suite 303, Allentown, PA 18103 (the "Practice" or "Business"), such assets, including but not limited to patient charts, furniture, fixture and equipment, referred to herein as the "Purchased Assets", the terms of which shall be further detailed in the Definitive Agreements.

Due Diligence:            Sixty (60) days

Closing:                 On or before November 22, 2024

1. Practice Location: 1247 S. Cedar Crest Blvd Suite 300 and Suite 303, Allentown, PA 18103
   a. Seller: SmileKrafters, P.C.,
   b. Buyer: Franklyn Scott, DDS, LLC

2. Proposed Definitive Agreement. As soon as reasonably practicable after the execution of this Letter, the Parties shall commence to negotiate a definitive purchase agreement (the "Definitive Agreement") relating to Buyer's acquisition of the Assets. The Definitive Agreement would include the terms summarized in this Letter and such other representations, warranties, conditions, covenants, indemnities and other terms as mutually agreed by the Parties and are not materially inconsistent with this Letter. The Parties shall also commence to negotiate ancillary agreements, including (i) a bill of sale and (ii) an assignment and assumption agreement. The Parties acknowledge that Seller is a Debtor-in-Possession in a pending Chapter 11 Bankruptcy case (Bankruptcy No. 24-12256 (PMM)) and that the transactions contemplated by this LOI and the definitive Purchase Agreement are subject to Bankruptcy court approval.

1

3. <u>Purchase Price</u>: $5,000,000.00

   1) The Purchase Price shall be paid as follows:

   Buyer shall use its best efforts to obtain available commercial financing. If Buyer is unable to obtain commercial financing, Seller will provide Buyer with financing in the amount of Five Million Dollars ($5,000,000.00) evidenced by a promissory note (the "Note") in a form and with terms satisfactory to Seller. The Note will be payable over a term of ten (10) years at an interest rate of six and one-half percent (6.5%). Buyer will make interest payments only until the second anniversary of the Closing Date at which time Seller may demand payment of the entire principal and interest due and owing or renegotiate the payment terms at Seller's sole discretion.

4. <u>Due Diligence:</u> From and after the date of this Letter, Seller will authorize its management to allow Buyer and its advisors full access to the facilities, records, key employees (with Seller's approval) and advisors of the Business for the purpose of completing Buyer's due diligence review. The due diligence investigation will include, but is not limited to, a complete review of the financial, legal, tax, environmental, intellectual property and labor records and agreements of the Business, and any other matters as Buyer's accountants, tax and legal counsel, and other advisors deem relevant in accordance with all applicable regulations including HIPAA.

5. <u>Closing:</u> The closing of the Proposed Transaction ("Closing") will take place on or before November 13, 2024, or such other day as mutually agreed by the parties.

6. <u>Seller Patient Privacy Policy:</u> Buyer acknowledges that (a) Seller has adopted a Patient Privacy Policy and (b) Buyer has reviewed such Patient Privacy Policy. Buyer agrees to adhere to and assume such Patient Privacy Policy at closing and to use patient information in the operation of Buyer's business solely in a manner consistent with such Patient Privacy Policy.

7. <u>Excluded Assets:</u> Cash, cash equivalents, bank accounts, retirement plans, automobiles, and personal items of the Practice owner.

8. <u>Lease Agreement:</u> Buyer intends to lease the underlying real estate of the Practice. The purchase of the Practice is contingent on Buyer entering into a lease agreement ("Lease") with the landlord or owner of the property where the Practice is located (the "Property") on terms agreeable to Buyer.

9. <u>Conditions for Closing:</u> Buyer's obligation to close the proposed Transaction will be subject to customary conditions, including:

    a. Buyer's satisfactory completion of due diligence;

    b. Buyer's satisfactory financing approval from Seller;

    c. Satisfactory lease agreement for Buyer at a maximum of current market rate in the area for a term of a minimum ten (10) years with option to renew for additional 10 years (5+5).

    d. Parties' execution of a Definitive Agreement and ancillary agreements;

    e. Receipt of any regulatory approvals and third-party consents, on terms satisfactory to Buyer; and

    f. No material adverse change in the business, results of operations, prospects, condition (financial or otherwise) or assets of the Business.

10. <u>Confidentiality:</u> Seller and Buyer shall each maintain the strict confidentiality of all confidential information which is communicated by either Seller or Buyer, or either Party's respective members, managers, officers, employees, or agents, to the other Party. In the event the transaction is not consummated, Seller and Buyer shall return all such information to the other, without retaining any copies or abstracts thereof, upon written request by the other Party.

11. <u>Expenses:</u> The Parties will each pay their own transaction expenses, including the fees and expenses of investment bankers and other advisors, incurred in connection with the proposed Transaction.

12. <u>Legal Effect:</u> The Parties understand that this letter: (a) represents their current intentions with respect to the Proposed Transaction as outlined herein; (b) does not constitute a legally binding agreement to consummate the Proposed Transaction, an agreement to enter into a legally binding agreement with respect to the Proposed Transaction, an offer capable of acceptance, or an agreement to agree; and (c) creates no legal or binding obligation on the part of either Party hereto except for the obligations set forth in Paragraph 10, which shall be binding upon Seller' acceptance of this letter. THIS LETTER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA.

13. <u>Termination:</u> This letter will automatically terminate and be of no further force and effect upon the earlier of (i) execution of the Definitive Agreement by Buyer and Seller, (ii) mutual agreement of Buyer and Seller, and (iii) 10:00 pm EST on September 30, 2024. Notwithstanding anything in the previous sentence, paragraph 10 shall survive

the termination of this Letter and the termination of this Letter shall not affect any rights any Party has with respect to the breach of this Letter by another Party prior to such termination.

14. Bid Expiration: This offer will remain in effect until September 30, 2024. unless accepted or rejected by Seller or withdrawn by Buyer prior to that time.

**ACCEPTED & AGREED TO BY:**

BUYER:
Franklyn Scott, DDS, LLC

SELLER:
SmileKrafters, P.C.

Signed: _____
        Franklyn Scott, DDS

Signed: _____
        Bhaskar Savani, DMD

Title: Managing Member

Title: President

Date: 8/22/2024

Date: 8/22/2024

4

# EXHIBIT "F"

# Smile Krafters P.C.

## NOTICE OF PRIVACY PRACTICES

**THIS NOTICE DESCRIBES HOW HEALTH INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED AND HOW YOU CAN GET ACCESS TO THIS INFORMATION.**

**PLEASE REVIEW IT CAREFULLY.**
**THE PRIVACY OF YOUR HEALTH INFORMATION IS IMPORTANT TO US.**

**OUR LEGAL DUTY**

We are required by applicable federal and state law to maintain the privacy of your health information. We are also required to give you this Notice about our privacy practices, our legal duties, and your rights concerning your health information. We must follow the privacy practices that are described in this Notice while it is in effect. This Notice takes effect 04/14/2003, and will remain in effect until we replace it.

We reserve the right to change our privacy practices and the terms of this Notice at any time, provided such changes are permitted by applicable law.   We reserve the right to make the changes in our privacy practices and the new terms of our Notice effective for all health information that we maintain, including health information we created or received before we made the changes. Before we make a significant change in our privacy practices, we will change this Notice and make the new Notice available upon request.

You may request a copy of our Notice at any time. For more information about our privacy practices, or for additional copies of this Notice, please contact us using the information listed at the end of this Notice.

**USES AND DISCLOSURES OF HEALTH INFORMATION**

We use and disclose health information about you for treatment, payment, and healthcare operations.  For example:

**Treatment:** We may use or disclose your health information to a physician or other healthcare provider providing treatment to you.

**Payment:** We may use and disclose your health information to obtain payment for services we provide to you.

**Healthcare Operations:** We may use and disclose your health information in connection with our healthcare operations. Healthcare operations include quality assessment and improvement activities, reviewing the competence or qualifications of healthcare professionals, evaluating practitioner and provider performance, conducting training programs, accreditation, certification, licensing or credentialing activities.

**Your Authorization:** In addition to our use of your health information for treatment, payment or  healthcare operations, you may give us written authorization to use your health information or to disclose it to anyone for any purpose. If you give us an authorization, you may revoke it in writing at any time. Your revocation will not affect any use or disclosures permitted by your authorization while it was in effect.  Unless you give us a written authorization, we cannot use or disclose your health information for any reason except those described in this Notice.

**To Your Family and Friends:** We must disclose your health information to you, as described in the Patient Rights section of this Notice. We may disclose your health information to a family member, friend or other person to the extent necessary to help with your healthcare or with payment for your healthcare, but only if you agree that we may do so.

**Persons Involved In Care:** We may use or disclose health information to notify, or assist in the notification of (including identifying or locating) a family member, your personal representative or another person responsible for your care, of your location, your general condition, or death. If you are present, then prior to use or disclosure of your health information, we will provide you with an opportunity to object to such uses or disclosures. In the event of your incapacity or emergency circumstances, we will disclose health information based on a determination using our professional judgment disclosing only health information that is directly relevant to the person's involvement in your healthcare. We will also use our professional judgment and our experience with common practice to  make reasonable inferences of your best interest in allowing a person to pick up filled prescriptions, medical supplies, x- rays, or other similar forms of health information.

**Marketing Health-Related Services:** We will not use your health information for marketing communications without your written authorization.

**Required by Law:** We may use or disclose your health information when we are required to do so by law.

**Abuse or Neglect:** We may disclose your health information to appropriate authorities if we reasonably believe that you are a possible victim of abuse, neglect, or domestic violence or the possible victim of other crimes. We may

disclose your health information to the extent necessary to avert a serious threat to your health or safety or the health or safety of others.

**National Security:** We may disclose to military authorities the health information of Armed Forces personnel under certain circumstances. We may disclose to authorized federal officials health information required for lawful intelligence, counterintelligence, and other national security activities. We may disclose to correctional institution or law enforcement official having lawful custody of protected health information of inmate or patient under certain circumstances.

**Appointment Reminders:** We may use or disclose your health information to provide you with appointment reminders (such as voicemail messages, postcards, or letters).

## PATIENT RIGHTS

**Access:** You have the right to look at or get copies of your health information, with limited exceptions. You may request that we provide copies in a format other than photocopies. We will use the format you request unless we cannot practicably do so. (You must make a request in writing to obtain access to your health information. You may obtain a form to request access by using the contact information listed at the end of this Notice. We will charge you a reasonable cost-based fee for expenses such as copies and staff time.  You may also request access by sending us a letter to the address at the end of this Notice. If you request copies, we will charge you $25 to locate and copy your health information, and postage if you want the copies mailed to you. If you request an alternative format, we will charge a cost-based fee for providing your health information in that format. If you prefer, we will prepare a summary or an explanation of your health information for a fee. Contact us using the information listed at the end of this Notice for a full explanation of our fee structure.)

**Disclosure Accounting:** You have the right to receive a list of instances in which we or our business associates disclosed your health information for purposes, other than treatment, payment, healthcare operations and certain other activities, for the last 6 years, but not before April 14, 2003. If you request this accounting more than once in a 12-month period, we may charge you a reasonable, cost-based fee for responding to these additional requests.

**Restriction:**  You have the right to request that we place additional restrictions on our use or disclosure of your health information. We are not required to agree to these additional restrictions, but if we do, we will abide by our agreement (except in an emergency).

**Alternative Communication:** You have the right to request that we communicate with you about your health information by alternative means or to alternative locations. **{You must make your request in writing.}**  Your request must specify the alternative means or location, and provide satisfactory explanation how payments will be handled under the alternative means or location you request.

**Amendment:** You have the right to request that we amend your health information.  (Your request must be in writing, and it must explain why the information should be amended.) We may deny your request under certain circumstances.

**Electronic Notice:** If you receive this Notice on our Web site or by electronic mail (e-mail), you are entitled to receive this Notice in written form.

## QUESTIONS AND COMPLAINTS

If you want more information about our privacy practices or have questions or concerns, please contact us.If you are concerned that we may have violated your privacy rights, or you disagree with a decision we made about access to your health information or in response to a request you made to amend or restrict the use or disclosure of your health information or to have us communicate with you by alternative means or at alternative locations, you may complain to us using the contact information listed at the end of this Notice. You also may submit a written complaint to the U.S. Department of Health and Human Services. We will provide you with the address to file your complaint with the U.S. Department of Health and Human Services upon request.

We support your right to the privacy of your health information. We will not retaliate in any way if you choose to file a complaint with us or with the U.S. Department of Health and Human Services.

Compliance Officer: Elliott N. Pincus, Esq.

Telephone:
Toll Free (ask for Compliance Officer): 855-342-5336          Direct Line: 215-390-3099

Fax: (215) 646-6199 (Attn. to Compliance Officer)          Email: legal@admpcmail.com

Address: 401 Commerce Drive, Suite #101, Fort Washington, PA 19034